IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TONY SMITH,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>RAMOS, et al.,<br><br>　　　　　Defendants. | No. 2:19-CV-0917-MCE-DMC-P<br><br>FINDINGS AND RECOMMENDATIONS |

Plaintiff, a prisoner proceeding pro se, brings this civil rights action pursuant to 42 U.S.C. § 1983. Pending before the Court is defendants' unopposed motion to dismiss (ECF No. 15).

**I. BACKGROUND**

On May 22, 2019, plaintiff submitted his civil rights complaint. On June 14, 2019, the Court found that plaintiff stated a cognizable claim for relief pursuant to 42 U.S.C. § 1983 and 28 U.S.C. § 1915A(b) and directed plaintiff to submit service documents for defendants. See ECF No. 10. On October 2, 2019, defendants filed their motion to dismiss plaintiff's complaint. See ECF No. 15. Plaintiff has submitted no opposition to the pending motion to dismiss.

/ / /

/ / /

## II. PLAINTIFF'S ALLEGATIONS

Plaintiff is a prisoner in the custody of the California Department of Corrections and Rehabilitation (CDCR) and brings this action against defendants Ramos and Jensen, CDCR employees. In its order directing plaintiff to submit service documents, the Court summarized plaintiff's allegations as follows:

> Plaintiff alleges Defendant Ramos left her post to harass Plaintiff at his cell over a prior issue that occurred in the dining hall. With Defendant Jensen, Defendant Ramos ordered Plaintiff to step out of his cell. Plaintiff alleges he was fearful Defendants would throw him to the ground, so Plaintiff asked to speak with a Sergeant. Defendants denied Plaintiff's request and allegedly responded, "You want to talk to a Sergeant, I'm really about to tear your shit up now, telling on me only makes me mad." Plaintiff asked again to speak to a Sergeant and was told to "shut up" by Defendants. Plaintiff alleges after speaking with a Sergeant, he was advised to complete a 602 form. Plaintiff alleges after filing the 602 form on the incident and returning to his cell, his personal property had been destroyed and Defendant Ramos stated, "That's what happens when you tell on me."
>
> Plaintiff alleges Defendant Ramos destroyed and disposed of photographs of Plaintiff's family and friends, photo albums, canteen items, legal work, and religious items. When Plaintiff asked Defendant Ramos the whereabouts of his items, Defendant Ramos allegedly informed Plaintiff she disposed of them in the "hot trash" as opposed to a regular trash where presumably Plaintiff could retrieve the items. Plaintiff alleges Defendant Ramos responded to his inquiry by telling him to "602 [the incident]" and stating, "that's what you get for reporting me to the Sergeant." Plaintiff alleges Defendant Ramos retaliated against him for reporting complaints, filing grievances, and filing the 602 on the above incident.

ECF No. 10, pgs. 2-3.

## III. STANDARD FOR MOTION TO DISMISS

In considering a motion to dismiss, the Court must accept all allegations of material fact in the complaint as true. See Erickson v. Pardus, 551 U.S. 89, 93-94 (2007). The Court must also construe the alleged facts in the light most favorable to the plaintiff. See Scheuer v. Rhodes, 416 U.S. 232, 236 (1974); see also Hosp. Bldg. Co. v. Rex Hosp. Trustees, 425 U.S. 738, 740 (1976); Barnett v. Centoni, 31 F.3d 813, 816 (9th Cir. 1994) (per curiam). All ambiguities or doubts must also be resolved in the plaintiff's favor. See Jenkins v. McKeithen, 395 U.S. 411, 421 (1969). However, legally conclusory statements, not supported by actual

2

1  factual allegations, need not be accepted. See Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949-50 (2009).
2  In addition, pro se pleadings are held to a less stringent standard than those drafted by lawyers.
3  See Haines v. Kerner, 404 U.S. 519, 520 (1972).

4        Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement
5  of the claim showing that the pleader is entitled to relief" in order to "give the defendant fair
6  notice of what the . . . claim is and the grounds upon which it rests." Bell Atl. Corp v. Twombly,
7  550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). However, in order
8  to survive dismissal for failure to state a claim under Rule 12(b)(6), a complaint must contain
9  more than "a formulaic recitation of the elements of a cause of action;" it must contain factual
10 allegations sufficient "to raise a right to relief above the speculative level." Id. at 555-56. The
11 complaint must contain "enough facts to state a claim to relief that is plausible on its face." Id. at
12 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the
13 court to draw the reasonable inference that the defendant is liable for the misconduct alleged."
14 Iqbal, 129 S. Ct. at 1949. "The plausibility standard is not akin to a 'probability requirement,' but
15 it asks for more than a sheer possibility that a defendant has acted unlawfully." Id. (quoting
16 Twombly, 550 U.S. at 556). "Where a complaint pleads facts that are 'merely consistent with' a
17 defendant's liability, it 'stops short of the line between possibility and plausibility for entitlement
18 to relief." Id. (quoting Twombly, 550 U.S. at 557).

19       In deciding a Rule 12(b)(6) motion, the Court generally may not consider materials
20 outside the complaint and pleadings. See Cooper v. Pickett, 137 F.3d 616, 622 (9th Cir. 1998);
21 Branch v. Tunnell, 14 F.3d 449, 453 (9th Cir. 1994). The Court may, however, consider: (1)
22 documents whose contents are alleged in or attached to the complaint and whose authenticity no
23 party questions, see Branch, 14 F.3d at 454; (2) documents whose authenticity is not in question,
24 and upon which the complaint necessarily relies, but which are not attached to the complaint, see
25 Lee v. City of Los Angeles, 250 F.3d 668, 688 (9th Cir. 2001); and (3) documents and materials
26 of which the court may take judicial notice, see Barron v. Reich, 13 F.3d 1370, 1377 (9th Cir.
27 1994).
28 ///

3

Finally, leave to amend must be granted "[u]nless it is absolutely clear that no amendment can cure the defects." Lucas v. Dep't of Corr., 66 F.3d 245, 248 (9th Cir. 1995) (per curiam); see also Lopez v. Smith, 203 F.3d 1122, 1126 (9th Cir. 2000) (en banc).

## IV.  DISCUSSION

Defendants argue: (1) plaintiff fails to state a cognizable claim for retaliation under the First Amendment; (2) plaintiff cannot state a cognizable due process claim based on destruction of his property; and (3) defendants are entitled to qualified immunity.  The Court finds that: (1) plaintiff's complaint fails to state any cognizable claims against defendant Jensen; (2) plaintiff's complaint does state a cognizable First Amendment retaliation claim against defendant Ramos; (3) plaintiff's complaint fails to state a cognizable due process claim against defendant Ramos; and (4) defendant Ramos is not entitled to qualified immunity at this time.

### A.     **Defendant Jensen**

As regards defendant Jensen, plaintiff has failed to allege sufficient facts to establish any cognizable claim.  To state a claim under 42 U.S.C. § 1983, the plaintiff must allege an actual connection or link between the actions of the named defendants and the alleged deprivations.  See Monell v. Dep't of Social Servs., 436 U.S. 658 (1978); Rizzo v. Goode, 423 U.S. 362 (1976).  "A person 'subjects' another to the deprivation of a constitutional right, within the meaning of § 1983, if he does an affirmative act, participates in another's affirmative acts, or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made." Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978).  Vague and conclusory allegations concerning the involvement of official personnel in civil rights violations are not sufficient.  See Ivey v. Board of Regents, 673 F.2d 266, 268 (9th Cir. 1982).  Rather, the plaintiff must set forth specific facts as to each individual defendant's causal role in the alleged constitutional deprivation.  See Leer v. Murphy, 844 F.2d 628, 634 (9th Cir. 1988).

///

///

///

Plaintiff's complaint is scant on specific factual allegations against defendant Jensen. Jensen is only mentioned once in plaintiff's statement of facts, where plaintiff notes that Officer Jensen was present with Officer Ramos when he was first ordered to step out of his cell on the date of the incident. However, besides this, plaintiff provides no further detail of Jensen's actions in relation to his claims. Plaintiff's attached copies of his prison grievances state that both Ramos and Jensen destroyed plaintiff's property. See ECF No. 1, pgs. 7, 13. However, plaintiff does not elaborate on what specific actions are attributable to Jensen, nor does he provide further context for his claims against this defendant.

Because plaintiff has failed to set forth specific facts as to defendant Jensen's casual role in the violation of plaintiff's rights, defendant Jensen should be dismissed.[1] Given plaintiff's failure to oppose defendants' motion or otherwise indicate that additional facts could be alleged to support the claim, the Court further finds this dismissal should be with prejudice and without leave to amend. See Local Rule 250(l) (stating that, in prisoner actions, "[f]ailure . . . to file an opposition . . . may be deemed a waiver of any opposition to the granting of the motion.").

**B.   Defendant Ramos**

Plaintiff's complaint suggests claims against defendant Ramos for retaliation as well as violation of due process related to destruction of his property. Defendant Ramos argues: (1) the facts alleged to not support a retaliation claim; (2) the facts alleged do not support a due process claim; and (3) he is entitled to qualified immunity.

1.   Retaliation

In order to state a claim under 42 U.S.C. § 1983 for retaliation, the prisoner must establish that he was retaliated against for exercising a constitutional right, and that the retaliatory action was not related to a legitimate penological purpose, such as preserving institutional security. See Barnett v. Centoni, 31 F.3d 813, 815-16 (9th Cir. 1994) (per curiam). In meeting this standard, the prisoner must demonstrate a specific link between the alleged retaliation and the exercise of a constitutional right. See Pratt v. Rowland, 65 F.3d 802, 807 (9th Cir. 1995);

---

[1]   In light of this finding, the Court addresses defendants' remaining arguments in the context of plaintiff's claims against defendant Ramos only.

Valandingham v. Bojorquez, 866 F.2d 1135, 1138-39 (9th Cir. 1989).  The prisoner must also show that the exercise of First Amendment rights was chilled, though not necessarily silenced, by the alleged retaliatory conduct.  See Resnick v. Hayes, 213 F.3d 443, 449 (9th Cir. 2000), see also Rhodes v. Robinson, 408 F.3d 559, 569 (9th Cir. 2005).  Thus, the prisoner plaintiff must establish the following in order to state a claim for retaliation: (1) prison officials took adverse action against the inmate; (2) the adverse action was taken because the inmate engaged in protected conduct; (3) the adverse action chilled the inmate's First Amendment rights; and (4) the adverse action did not serve a legitimate penological purpose.  See Rhodes, 408 F.3d at 568.

Here, defendants argue that plaintiff cannot establish that they took adverse action against plaintiff for engaging in protected conduct. Specifically, defendants state:

> Here, Plaintiff did not file his inmate appeal/grievance until the day after the alleged actions by Defendants. Plaintiff alleges that Defendants searched his cell and deprived him of his personal property on August 29, 2018. (ECF No. 1 at p. 3-4.) However, as Plaintiff's complaint attachment makes clear, he did not submit his inmate appeal/grievance regarding his allegations until the next day, August 30, 2018. (Id. at p. 11 & 13.) Plaintiff's inmate appeal/grievance states that on August 29, 2018, he was in the dining hall, and noticed Defendant Ramos in a heated exchange. (Id. at 11 & 13.) Plaintiff returned to his cell and subsequently was told to step out of his cell by Defendant Ramos. (Id. at p. 13). Plaintiff's grievance asserts he asked to speak to the sergeant and his personal property was destroyed. (Id.) Plaintiff signed the form and in both signature lines, entered the date submitted as "8/30/18." (Id. at p. 11 & 13.) Logically, Defendants cannot have retaliated against Plaintiff on August 29, 2018 on the basis of an inmate appeal/grievance submitted the next day on August 30, 2018. As such, Plaintiff's complaint does not allege that the Defendants took adverse action against Plaintiff's protected conduct. This claim and thus Plaintiff's complaint should therefore be dismissed for failure to state a claim.

ECF No. 15-1, pgs. 4-5.

The Court disagrees with defendants' assessment that plaintiff's claims fail against defendant Ramos. Defendants argue that, because plaintiff submitted his 602 grievance one day after the incident, defendants' alleged destruction of plaintiff's property could not have been in retaliation for filing said grievance. However, this reasoning fails to take into account the full context of plaintiff's complaint.

///

///

1        Plaintiff claims that officer Ramos, accompanied by officer Jensen, entered
2   plaintiff's cell to harass him over a previous incident in the dining hall. See ECF No. 1, pg. 3.
3   Plaintiff was then forced out of his cell and, fearful of defendants' conduct, indicated that he
4   wished to speak to a sergeant. At this indication, Ramos allegedly acknowledged plaintiff's desire
5   to complain to a superior officer and stated, "[y]ou want to talk to a Sergeant[?] I'm really about
6   to tear your shit up now, telling on me only makes me mad." ECF No. 1, pg. 3. After this,
7   plaintiff left the area to acquire the assistance of a sergeant. When plaintiff returned to his cell, he
8   discovered that defendant Ramos had destroyed his property and placed it in the "hot trash." Id. at
9   4. Therefore, while plaintiff might not have filed the 602 grievance until the day after the
10  incident, he nonetheless alleges that defendant Ramos was aware that plaintiff intended to
11  complain about Ramos' conduct to a higher authority. As such, it can reasonably be inferred that
12  defendant Ramos was aware that plaintiff intended to report his misconduct and subsequently
13  destroyed plaintiff's property. Adverse action taken by state agents upon a prisoner who attempts
14  to report misconduct is the sort occurrence that constitutes a First Amendment retaliation claim.
15  See Rhodes, 408 F.3d at 566.  Thus, it is not necessary that the attempt to report misconduct or
16  otherwise engage in a protected activity need to have been completed for defendant Ramos to
17  have retaliated.

18       The Court notes that plaintiff's complaint is not the artful pleading of an attorney,
19  but that of a pro se litigant. The complaint contains multiple fragmented sentences, is at some
20  points difficult to understand, and a precise description of the events of August 29, 2018, is not
21  present. However, at this stage, all of plaintiff's factual allegations must be taken as true and any
22  ambiguities stemming therefrom must, within reason, be resolved in his favor. When coupled
23  with the established principle that pro se pleadings enjoy a more liberal standard of interpretation,
24  the Court finds that plaintiff's complaint alleges sufficient facts to establish a claim of retaliation
25  under the First Amendment against defendant Ramos.
26  / / /
27  / / /
28  / / /

///

2. <u>Due Process</u>

Defendant argue: "To the extent Plaintiff's complaint alleged a free standing denial or intentional deprivation of property claim, that was not screened out by the Court, this claim should be dismissed." ECF No. 15-1, pg. 7. The Court agrees. As defendants note, the negligent or intentional deprivation of property does not establish a cognizable due process claim where the state provides an adequate post-deprivation remedy and California law provides such a remedy. <u>See</u> <u>Barnett v. Centoni</u>, 31 F.3d 813, 816-17 (9th Cir. 1994).

3. <u>Qualified Immunity</u>

Government officials enjoy qualified immunity from civil damages unless their conduct violates "clearly established statutory or constitutional rights of which a reasonable person would have known." <u>Harlow v. Fitzgerald</u>, 457 U.S. 800, 818 (1982). In general, qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." <u>Malley v. Briggs</u>, 475 U.S. 335, 341 (1986). In ruling upon the issue of qualified immunity, the initial inquiry is whether, taken in the light most favorable to the party asserting the injury, the facts alleged show the defendant's conduct violated a constitutional right. <u>See</u> <u>Saucier v. Katz</u>, 533 U.S. 194, 201 (2001). If a violation can be made out, the next step is to ask whether the right was clearly established. <u>See id.</u> This inquiry "must be undertaken in light of the specific context of the case, not as a broad general proposition . . . ." <u>Id.</u> "[T]he right the official is alleged to have violated must have been 'clearly established' in a more particularized, and hence more relevant, sense: The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." <u>Id.</u> at 202 (citation omitted). Thus, the final step in the analysis is to determine whether a reasonable officer in similar circumstances would have thought his conduct violated the alleged right. <u>See id.</u> at 205.

When identifying the right allegedly violated, the court must define the right more narrowly than the constitutional provision guaranteeing the right, but more broadly than the factual circumstances surrounding the alleged violation. <u>See</u> <u>Kelly v. Borg</u>, 60 F.3d 664, 667 (9th Cir. 1995). For a right to be clearly established, "[t]he contours of the right must be sufficiently

8

clear that a reasonable official would understand [that] what [the official] is doing violates the right." See Anderson v. Creighton, 483 U.S. 635, 640 (1987).  Ordinarily, once the court concludes that a right was clearly established, an officer is not entitled to qualified immunity because a reasonably competent public official is charged with knowing the law governing his conduct.  See Harlow v. Fitzgerald, 457 U.S. 800, 818-19 (1982).  However, even if the plaintiff has alleged a violation of a clearly established right, the government official is entitled to qualified immunity if he could have ". . . reasonably but mistakenly believed that his . . . conduct did not violate the right."  Jackson v. City of Bremerton, 268 F.3d 646, 651 (9th Cir. 2001); see also Saucier, 533 U.S. at 205.

The first factors in the qualified immunity analysis involve purely legal questions. See Trevino v. Gates, 99 F.3d 911, 917 (9th Cir. 1996).  The third inquiry involves a legal determination based on a prior factual finding as to the reasonableness of the government official's conduct.  See Neely v. Feinstein, 50 F.3d 1502, 1509 (9th Cir. 1995).  The district court has discretion to determine which of the Saucier factors to analyze first.  See Pearson v. Callahan, 555 U.S. 223, 236 (2009).  In resolving these issues, the court must view the evidence in the light most favorable to plaintiff and resolve all material factual disputes in favor of plaintiff.  See Martinez v. Stanford, 323 F.3d 1178, 1184 (9th Cir. 2003).

Here, defendants argue that, regardless of whether plaintiff states a cognizable claim, they are nonetheless entitled to qualified immunity. Specifically, defendants argue that:

> It was not established in August 2018 that oral statements or complaints in the prison context, such as those Plaintiff alleges here, were conduct protected by the First Amendment. Two courts have recently reviewed whether oral complaints have been "clearly established" as protected conduct. In Ahmed v. Ringler, No. 2:13-cv-1050 MCE DAD P, 2015 WL 502855 (E.D. Cal. Feb. 5, 2015), plaintiff alleged that defendant broke plaintiff's radio in retaliation for a verbal complaint about a previous cell search. The court dismissed the retaliation claim based on the qualified immunity defense, stating that "[t]o date, neither the Supreme Court nor the Ninth Circuit has held that mere oral complaints by a prisoner can form the basis of a retaliation claim within the prison context." Id. at *7 (noting district court cases have found both that an oral complaint can be the basis for a retaliation claim and the opposite)2. In Christ v. Blackwell, No. 2:10-cv-0760-EFB P, 2016 WL 4161129, at *8-9 (E.D. Cal. Aug. 3, 2016), the plaintiff alleged his threat to file a written inmate grievance was protected conduct. The court cited the above language from Ahmed and dismissed based on qualified immunity. See

>also Torres v. Arellano, No. 1:15-cv-00575-DAD-MJS (PC), 2017 WL 1355823, at *13 (E.D. Cal. Mar. 24, 2017) ("Neither the Ninth Circuit nor the Supreme Court has decided whether a prisoner's verbal complaints constitute protected conduct.") (collecting cases).
>
>Here, just as in Ahmed and Christ, it was not clearly established that an oral statement or verbal complaint was protected conduct under the First Amendment in prison. There is no robust consensus of cases recognizing that an oral complaint by a prisoner can form the basis of a retaliation claim within the prison context. See Ahmed v. Ringler at *7; see also Christ v. Blackwell at *8. Accordingly, even assuming the truth of Plaintiff's allegations, Defendants violated no clearly established law. As such, Defendants are entitled to qualified immunity as to Plaintiff's claim for retaliation,and that claim and his complaint should be dismissed.

ECF No. 15, pgs. 6-7.

As regards defendant Ramos, the Court is unconvinced that Ramos is entitled to qualified immunity at this time. "At the motion to dismiss stage, a plaintiff does not need to show with great specificity how each defendant contributed to the violation of his constitutional rights. Rather, he must state the allegations generally so as to provide notice to the defendants and alert the court as to what conduct violated clearly established law." Davis v. Powell, 901 F. Supp. 2d 1196, 1235 (S.D. Cal. 2012) (quotations and citations omitted). Plaintiff's complaint alleges that defendant Ramos destroyed plaintiff's property in retaliation for plaintiff's attempt to report Ramos' mistreatment. It has been clearly established that prison officials cannot take adverse action against an inmate in retaliation for engaging in the prison grievance process. See Sepulveda v. Lee, No. ED CV 10-1705-CAS (PJW), 2011 U.S. Dist. LEXIS 116548, at *30 (C.D. Cal. July 27, 2011); see also Brodheim v. Cry, 584 F.3d 1262, 1269 (9th Cir. 2009) (noting retaliation against prisoners for exercising right to file prison grievances is "prohibited as a matter of 'clearly established law'" (quoting Rhodes, 408 F.3d at 566)). Also, defendants make no convincing argument that Ramos could have reasonably, but mistakenly, believed his conduct was permissible.  To the contrary, plaintiff's allegations suggest an effort on the part of Ramos to, at a minimum, dissuade plaintiff from engaging in protected activity by threatening to destroy his property if he did so. The Court, therefore, concludes that defendant Ramos is not entitled to qualified immunity.

///

///

**CONCLUSION**

Based on the foregoing, the undersigned recommends that:

1. Defendants' motion to dismiss (ECF No. 15) be granted in part and denied in part;

2. Defendant Jensen be dismissed from this action, with prejudice; and

3. This action may proceed on plaintiff's First Amendment retaliation claim against defendant Ramos.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within 14 days after being served with these findings and recommendations, any party may file written objections with the court.  Responses to objections shall be filed within 14 days after service of objections.  Failure to file objections within the specified time may waive the right to appeal.  See Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated:  August 20, 2020

DENNIS M. COTA
UNITED STATES MAGISTRATE JUDGE